UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.09-60510-CIV-UNGARO

RICHARD ABRAMOWITZ and
HOWARD POMERANTZ as Trustees for
the Abramowitz & Pomerantz, PA Retirement
Plan, et al.,
    Plaintiffs,

v.

WESTPORT NATIONAL BANK, a division
of Connecticut Community Bank, N.A., et al.,
    Defendants.
                                        /

**AMENDED
ORDER ON MOTIONS TO DISMISS**

THIS CAUSE is before the Court upon Westport National Bank's Motion to Dismiss (D.E. 40) and Motion of Defendant Robert L. Silverman to Dismiss Plaintiffs' Amended Complaint (D.E. 41). The Motions have been fully briefed and are ripe for disposition. (*See* D.E. 45, 46, 47, and 48.)

THE COURT has considered the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

**Background**

This case is brought by investors who fell victim to Bernard L. Madoff's ('Madoff')" well-documented ponzi scheme.[1] (First Amended Compl. (D.E. 25, the "Compl.") ¶ 16.) Rather than suing Madoff for their investment losses, however, Plaintiffs have chosen to sue their investment advisor and the bank that served as custodian for their investments accounts.

Plaintiffs are trustees of a retirement plan (the Abramowitz & Pomerantz, P.A.

---

[1] For purposes of these Motions to Dismiss, the Court takes the facts alleged in the Complaint as true. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Accordingly, the Court will largely dispense with the use of "allegedly" in the following narrative.

Retirement Plan, hereinafter the "Plan"), which was developed as a customized investment product for Abramowitz & Pomerantz, P.A., and the owners of individual retirement accounts ("Individual Investors").  (Compl. ¶¶ 12-13, 19)

Defendant Robert Silverman ("Silverman") served as Plaintiffs' investment advisor.  (*See* Compl. ¶ 17.).  He is also the principal of Defendants PSCC, Inc. and PSCC Services, Inc. (together, "PSCC").[2]  (Compl. ¶ 18.)  Together with PSCC, Silverman developed and managed the Plan and the individual retirement accounts at issue in this case.  (Compl. ¶¶ 19, 24.) Silverman and PSCC promoted Bernard L. Madoff Investment Securities, LLC ("BLMIS") as a suitable investment for retirement or pension plans and "bragged about their special relationship with Madoff that enabled them to place Plaintiffs' funds with BLMIS."  (Compl. ¶ 30.)

Defendant Westport National Bank ("Westport") served as the custodian bank for the Plan and the individual retirement accounts ("IRAs").  (Compl. ¶¶ 25-26.)  In connection therewith, Westport executed a Custodial Agreement with the Plan (D.E. 25-1) and Custodial Agreements with each of the Individual Investors. (D.E. 25-7 (Robin Abramowitz IRA); D.E. 25-8 (Howard L. Pomerantz IRA); D.E. 40-4 (Wendy Sager Pomerantz Rollerover IRA).)  The Custodial Agreements all contained express authorization and direction to Westport to enter into an agreement with BLMIS under which BLMIS "will have full discretionary authority as to the manner in which funds are invested."  (*See, e.g.,* Plan Custodial Agreement (D.E. 25-1) ¶ 2.)  The Custodial Agreements also expressly state that the Plan and Individual Investors did not rely on Westport in choosing to give BLMIS full discretionary authority, that Westport was acting solely

---

[2]     Two days after this action was filed, PSCC Services, Inc. and PSCC, Inc. separately filed for bankruptcy.  (*See* D.E. 9.)

in a ministerial capacity, and that Westport assumes no responsibility for the investment performance of BLMIS. (*See, e.g., id.*) Finally, the Custodial Agreements required Westport to "maintain adequate records indicating the ownership by the [Plan] of investments with BLMIS" and "render at least annually statements reflecting the property held by it as custodian hereunder." (*See, e.g., id.* at ¶¶ 4-5.)

Pursuant to the Custodial Agreements, Westport "assembled monies from various sources, including Plaintiffs' custodial accounts, and pooled the monies into a single account, which was then invested in BLMIS." (Compl. ¶ 29.) Westport also retained a part of the fees collected for Plaintiffs' custodial accounts and paid a portion of the fees to Silverman, through PSCC. (Compl. ¶¶ 26-28.) The fees collected for Silverman "were far greater than and disproportionate to the industry custom for services provided by Silverman." (Compl. ¶ 27.)

Plaintiffs do not allege how much they invested with Silverman, Westport, PSCC, or BLMIS, nor do they allege the total amount of their investment losses. Instead, Plaintiffs only aver generally that they have incurred damages, including the loss of amounts invested and fees and commission paid to PSCC, Westport, and BLMIS. (*See* Compl. ¶¶ 47, 52, 55, 58, 61.)

On April 6, 2009, Plaintiffs filed their Complaint against Silverman, PSCC, and Westport. The Complaint contains one federal claim and five state law claims: (1) violation of 15 U.S.C. § 78j against all Defendants; (2) breach of contract against Westport; (3) negligence against Silverman and PSCC; (4) negligence against Westport; (5) breach of fiduciary duty against Silverman and PSCC; and (6) accounting.

In response, Westport filed its Motion to Dismiss wherein it argues, *inter alia*, that there is no basis for personal jurisdiction. For the reasons stated below, the Court agrees and dismisses

Westport from this action.

In Silverman's Motion to Dismiss, he argues that Plaintiffs have failed to state a claim under 15 U.S.C. § 78j, and, therefore, Count 1 fails as a matter of law. This Court agrees and dismisses Count 1 of Plaintiff's Complaint. Additionally, Silverman argues that the state law claims against him should be dismissed as well. For the reasons stated below, the Court dismisses Plaintiffs' accounting claim, but finds that Plaintiffs adequately stated a claim against Silverman for negligence and breach of fiduciary duty.

**Standard**

**I.     Motion to Dismiss**

In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, such rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (citation omitted). The plausibility standard requires more than a sheer

4

possibility that a defendant has acted unlawfully. *Id*. (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. (internal quotations and citation omitted). Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id*. (citation omitted).

## II.     Heightened Pleading Requirements for Securities Fraud Claims

Ordinarily, a complaint is adequate if it meets Fed. R. Civ. P. 8(a)(2). Securities fraud claims, however, have always been subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other condition of mind of a person shall be averred generally." Fed. R. Civ. P. 9(b). The Eleventh Circuit has stated that Rule 9(b)'s fraud particularity requirement is met as long as the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citation omitted).

In 1995, Congress passed the Private Securities Litigation Reform Act of 1995, Pub. L. No. 194-67, 109 Stat. 743, codified at 15 U.S.C. § 78u-4(b) ("PSLRA"), which made two notable changes to the pleading requirements for securities fraud actions. First, the PSLRA slightly

altered Rule 9(b)'s particularity requirement by mandating that a securities fraud action complaint

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(B). Thus, the PLSRA requires greater specificity than Rule 9(b). *Druskin,* 299 F. Supp. 2d. at 1321.

Second, the PSLRA raised the standard for pleading scienter; a plaintiff can no longer plead scienter generally. The plaintiff must, for each alleged misrepresentation, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). "Moreover, the complaint must allege facts supporting a strong inference of scienter for *each defendant* with respect to *each violation*." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008) (emphasis added) (citing *Phillips v. Scientif-Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004)). The Court must dismiss the action if either of these two pleading requirements are not met. *Druskin v. Answerthink, Inc.*, 299 F.Supp.2d 1307, 1321 (S.D. Fla. 2004).

## Analysis

**I.     Personal Jurisdiction over Westport**

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant challenges personal jurisdiction by submitting an affidavit in support of its position

(such as Westport has done here[3]), then the burden shifts to the plaintiff to produce evidence supporting personal jurisdiction. *Id.*

A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists: (1) whether the exercise of jurisdiction is appropriate under the state long-arm statute; and (2) whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Id.* Because the Court finds, for the reasons stated fully below, that there is no jurisdiction under Florida's long-arm statute, the Court need not reach the due process inquiry.

The reach of the Florida's long-arm statute, Fla. Stat. § 48.193, is a question of Florida law, and federal courts are required to construe it as would the Florida Supreme Court. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890-91 (11th Cir. 1983). Florida's long-arm statute provides, in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> \* \* \*
>
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(a),(g). This statute is to be strictly construed. *Id.* at 891.

At the outset, the Court notes that Plaintiffs' Complaint alleges generally that the Court

---

[3] *See* Affidavit of Clark in Support of Westport National Bank's Motion to Dismiss, filed on July 10, 2009 (D.E. 40-5).

has personal jurisdiction over Westport pursuant to Fla. Stat. § 48.193; Plaintiffs do not allege under which subsection of Fla. Stat. § 48.193 jurisdiction lies.  In response to Westport's Motion to Dismiss, however, Plaintiffs argue they have stated a prima facie case for jurisdiction under Fla. Stat. § 48.193(1)(a) and (g).  (Response at 4.)  Therefore, the Court will limits its personal jurisdiction analysis to these two subsections.

Plaintiffs argue that the Complaint states a prima facie case for personal jurisdiction over Westport because they asserted that "at all times material [Westport] was operating, conducting, engaging in or carrying on a business in Broward County, Florida." (Compl. ¶ 4.)  The Complaint also alleges that Westport's "business activities in . . . Florida are substantial and not isolated, in that the bank has solicited and serviced the investments of numerous Florida residents, as a custodial bank [and] transmitted information and account statements pertaining to Florida investors' accounts to these investors via mail, electronic mail, and telephonic communications." (Compl. ¶¶ 4-5.)  Plaintiffs also argue that they have stated a prima facie case for personal jurisdiction because the Complaint alleges that Westport breached a contract with the Plaintiffs.

First, the Court finds that there is no personal jurisdiction over Westport under § 48.193(1)(a), which provides personal jurisdiction over defendants who are "carrying on a business or business adventure" or have an office or agency in Florida.  "In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, '[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996) (quoting *Dinsmore v.*

*Martin Blumenthal Assocs., Inc.,* 314 So.2d 561, 564 (Fla.1975)).

It is undisputed that Westport has no Florida offices, no Florida licenses, no Florida addresses or phone numbers, and no assets or employees located in Florida.  (*See* D.E. 40-5 (the "Clark Affidavit") ¶¶ 5-11).)  Westport has never advertised in Florida, nor solicited business in Florida.  (*See id.* ¶ 11.)  In fact, it is undisputed that Silverman recommended and introduced Plaintiffs to Westport; Westport did not solicit Plaintiffs.  (*See id.* ¶ 12; Affidavit of Richard Abramowitz, Esq. (D.E. 45, the "Abramowitz Affidavit") ¶ 6.)  It is also undisputed that Westport did not meet any of the parties in this action in Florida and that "any contracts with respect to the matters at issue in this lawsuit . . . were executed by [Westport] in Connecticut." (Clark Affid. ¶ 13.)  Finally, Westport's contractual relationship with Plaintiffs was ministerial by nature – the Custodial Agreements expressly state that Plaintiffs chose BLMIS to receive and invest their funds, that Westport has no authority over their funds, and that Westport is "acting solely in a ministerial capacity."  (*See* Custodial Agreements at ¶ 2.)

The only evidence Plaintiffs provide in support of personal jurisdiction is that Westport corresponded with Plaintiffs regarding their investments and various employees for the Plaintiffs spoke with Westport employees.  (Abramowitz Aff. ¶ 9.)  A series of telephone calls alone, however, does not confer personal jurisdiction under Florida's long arm statute.  *See Sculptchair,* 94 F.3d at 628 (finding that there was no personal jurisdiction over a defendant whose activities in Florida consisted of a series of telephone calls and a one-hour meeting to facilitate contract negotiations); *see also Consol. Energy, Inc. v. Strumor*, 920 So. 2d 829, (Fla. 4th DCA 2006) ("While telephone communications may provide a basis for personal jurisdiction, it only occurs when those communications *give rise to the cause of action*." (emphasis added)).

The Court also notes that it is not persuaded by Plaintiffs' authority that a single project or transaction may be sufficient to constitute a "business venture" for purposes of Fla. Stat. § 48.193(1)(a). For example, the Third DCA found in *Atlantis Marina & Yacht Club, Inc., v. R&R Holdings, Inc.*, that "[b]ringing a $1.45 million yacht to Florida, marketing it over a period of time, and ultimately selling it, amounted to a business venture for purposes of a long-arm statute." 766 So. 2d 1163, 1165 (Fla. 3d DCA 2000). In the present case, however, no goods or services were sold and marketed in Florida.

Second, the Court finds that there is no personal jurisdiction over Westport under § 48.193(1)(g), which provides personal jurisdiction over defendants who breach a contract in Florida by "failing perform acts *required by the contract* to be performed *in [Florida]*." Fla. Stat. § 48.193(1)(g) (emphasis added). Plaintiffs allege in Count 2 of the Amended Complaint alleges that Westport breached the Custodial Agreements "by failing to maintain adequate records of the Plaintiffs' investments with BLMIS, and by failing to return the funds upon demand by the Plaintiffs." (Compl. ¶ 51.) Importantly, however, the Custodial Agreements do not require that Westport maintain adequate records *in Florida*. Nor do the Custodial Agreements require that Westport return Plaintiffs' investments to them *in Florida*. In fact, Westport could have conceivably fulfilled its contractual duty to remit Plaintiffs' funds to them through Silverman (a Connecticut resident) – the same way Westport acquired Plaintiffs' funds in the first place. (*See* Clark Aff. ¶ 13.)

As the Eleventh Circuit emphasized, the specific jurisdiction provision of § 48.193(1)(g) "means that there must be a duty to perform an act *in Florida;* a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex*

*Ins. Co., Ltd.*, 178 F.3d 1209, 1218 (11th Cir. 1999) (emphasis in original). Thus, the fact that Plaintiffs are currently Florida residents and Westport has a contractual duty to tender performance to them is not, in of itself, enough to establish specific jurisdiction under § 48.193(1)(g). *See also Consol. Energy,* 920 So. 2d at 831 (rejecting plaintiff's argument that there was personal jurisdiction because defendant failed to deliver stock in Florida where the contract did not expressly require performance in Florida, only that certain notice be sent to plaintiff's representative in Florida); *Travel Opportunities of Ft. Lauderdale, Inc., Walter Karl List Mgmt., Inc.,* 726 So. 2d 313, 314 (Fla. 4th DCA 1998) (reaffirming that "it is not enough that a foreign defendant merely contract with a Florida resident," but that the "contract itself must require performance in Florida"); *Classic Lines, Inc. v. Nat'l Coach Corp.*, 734 F.Supp. 471, (S.D. Fla. 1990) (finding no personal jurisdiction under § 48.193(1)(g) wether the contract itself makes no reference to any acts to be performed in Florida by either party).

As the Court finds that there is no personal jurisdiction over Westport under either § 48.193(1)(a) or § 48.193(1)(g), the Court dismisses Westport from this action and now turns to Plaintiffs' remaining claims against Silverman.

## II.     Count 1 - Claim for Securities Fraud Under Federal Law

Count 1 of Plaintiffs' Complaint alleges violations against Silverman under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.[4] Section 10(b) states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any

---

[4]     The Complaint actually states that Silverman, PSCC, and Westport violated "Rule 10-5", but the Court reads this as a typographical error. (*See* Compl. ¶ 45.)

> national securities exchange--
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (2000).  Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2007).

In order to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege the following: (1) the defendant made misstatements or omissions, (2) of a material fact, (3) with scienter, (4) on which plaintiff relied, (5) that proximately caused plaintiff's injury. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1281 (11th Cir. 1999); *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).  To prove the causation element, the plaintiff must show both (1) that the misrepresentations or omissions caused them to engage in the transaction in question ("transaction causation") and (2) that the fraud was in some proximate way responsible for their loss ("loss causation").  *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (citations omitted).

In his Motion to Dismiss, Silverman argues that Plaintiffs have failed to state a claim under Section 10(b) and Rule 10b-5.  (Silverman Motion at 7.)  The Court considers the

argument in conjunction with the allegations made against Silverman to determine whether Count 1 fails as a matter of law.

Plaintiffs argue that they have adequately stated a claim for securities fraud against Silverman and, for support, direct the Court to specifically consider paragraphs 40 to 43 in the Complaint. These paragraphs allege that

- Silverman made "numerous deceptive and untrue statements of material facts and omitted material information in establishing Plaintiffs' retirement accounts[5] and the investment strategy for the Individual Investors, and in inducing the Plaintiffs to place funds in the retirement accounts and . . . the IRAs with Westport and BLMIS" (Compl. ¶ 40);

- Silverman "failed to disclose the risk associated with providing fully discretionary authority over the Plaintiffs' investments to Madoff and BLMIS, notwithstanding the fact that [he and PSCC] were aware of said risk, and of the threat to Plaintiffs' investment by providing such authority to Madoff and BLMIS" (Compl. ¶ 41); and

- Silverman "failed to disclose the financial conflict of interest associated with the disproportionate and unconscionable record-keeping fees collected by Westport and paid to Silverman [and PSCC]. . . in exchange for placing Plaintiffs' investments in the Westport Custodial Account" (Compl. ¶ 42).

After considering these allegations specifically and the allegations contained the Complaint as a whole, the Court finds that Plaintiffs have failed to meet the heightened pleading requirements for securities fraud claims, and their claim against Silverman fails. While Plaintiffs allege that Silverman made "numerous deceptive and untrue statements of material facts," they do not allege specifically what those statements were, the time and place of each such statement, the content of the statements, the manner in which they misled the Plaintiffs, or what Silverman obtained as a consequence of his fraud. *See Ziemba*, 256 F.3d at 1202. Consequently, Plaintiffs

---

[5] Plaintiffs use the term "RETIREMENT ACCOUNT", but do not define this term in their Complaint. Construing the Complaint liberally, the Court understand the generic reference to "RETIREMENT ACCOUNT" to include the accounts held by individuals in the Plan *and* the IRAs.

have failed to meet Rule 9(b)'s pleading requirements.

Moreover, while Plaintiffs allege that Silverman failed to disclose the risk of investing with BLMIS, they do not allege that Silverman acted with the required state of mind, or scienter. *See* 15 U.S.C. § 78u-4(b)(2). Nor do Plaintiffs state with particularity the facts that give rise to a strong inference of scienter for each alleged misrepresentation. *See id.* For example, Plaintiffs do not allege that Silverman actually knew that Madoff was perpetrating a ponzi scheme when Silverman induced the Plaintiffs to invest in BLMIS, or that there were red flags that should have alerted him to the fact that Madoff was perpetrating a fraud. *See Rosenberg v. Gould*, 554 F.3d 962, 966 (11th Cir. 2009) (finding that plaintiff failed to allege scienter where there were no allegations regarding defendant's actual knowledge of the untruthfulness of his statements or any glaring irregularities or "red flags" that should have put the him on notice as to his statements' untruthfulness). The inference that Silverman fraudulently promoted the BLMIS investment because he collected fees is not as compelling as the competing inference that he was unaware of that BLMIS was a ponzi scheme. *See Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238-29 (11th Cir. 2008) (reaffirming the rule that the scienter inquiry is inherently comparative and that courts must consider plausible non-culpable explanations for defendant's conduct). Importantly, when determining whether a securities plaintiff has sufficiently alleged scienter, a court must look at the complaint holistically and ask what a reasonable person *would* think–not *could* think. *Mizzaro,* 544 F.3d at 1239. At best, Plaintiffs' allegations may rise to the level of poor investment advice, but not to the level of fraud. In Plaintiffs' own words, they are victims of *Madoff's* fraud

and whatever scienter may be inferred on his part cannot be sustain a claim against Silverman.[6]

For all the foregoing reasons, the Court finds that Plaintiffs have not stated a claim for securities fraud as to Silverman and dismisses Count I.

### III.   Count 3 (Negligence) and Count 5 (Breach of Fiduciary Duty)

Silverman argues that Plaintiffs' negligence claim fails as a matter of law because they fail to allege the facts necessary to establish that Silverman owed duty to them, or that a breach of any such duty proximately caused their losses. (Silverman Motion at 16-17.) Silverman further argues that Plaintiffs' breach of fiduciary duty claim fails because they do not specifically state what he did as an investment manager and investment advisor that gave rise to a fiduciary relationship. (*Id.* at 15-16.)

The Court finds that Plaintiffs adequately allege facts necessary to state a claim for negligence and breach of fiduciary duty. In their Complaint, Plaintiffs refer to Silverman as "their trusted investment advisor." (Compl. ¶ 17.) They state that Silverman "actively promoted investment with Westport and BLMIS as suitable for retirement and pension plans" and "assured [them] that BLMIS investment was appropriate and met the goals and purposes of the Retirement Plan and the individual IRAs." (Compl. ¶¶ 30-31.) However, "contrary to the representations and assurances provided by Silverman . . . funds invested with Westport were placed at the complete and unsupervised disposal of Madoff, who is not recognized to be one of the most notorious con-men in modern history." (Compl. ¶ 33.)

More specifically, Plaintiffs allege in their negligence claim that Silverman "owed a duty .

---

[6] Additionally, Plaintiffs' fail to demonstrate how an allegation that Silverman failed to disclose the "financial conflict of interest" associated with the fee-sharing arrangement between himself and Westport supports a claim for securities fraud.

. . to use reasonable care in the development and implementation" of the Plan and the Individual Investor's retirement accounts. (Compl. ¶ 53.) They allege a breach of that duty (e.g., failure to warn of investment risks, failure to investigate and monitor BLMIS), which then cost them losses (e.g., loss of investments and plus all commissions and fees paid). Thus, reading these allegations in conjunction with the factual allegations pled, the Court finds that Plaintiffs have adequately alleged a duty, a breach, causation, and damages.

Additionally, the Court finds Plaintiffs adequately pled a breach of fiduciary duty. Plaintiffs allege that Silverman owed a fiduciary duty as their investment manager and investment advisor (Compl. ¶59) and that Silverman breached that duty by, *inter alia,* failing to conduct due diligence in the selection of the BLMIS investments (Compl. ¶ 60.) Contrary to Silverman's contentions, Plaintiffs do not simply allege in a conclusory manner that he was their investment manager; Plaintiffs specifically allege that Silverman developed and customized the Plan for their retirement needs, and that, in connection therewith, he promoted certain investments and provided reassurances to Plaintiffs. (*See* Compl. ¶¶ 19, 30.) Thus, the Court finds that Plaintiffs sufficiently alleged facts to support their fiduciary duty allegations.

Finally, the Court has considered but rejects Silverman's argument that Plaintiffs' negligence and breach of fiduciary duty claims are time barred. Plaintiffs' claims do not solely relate to their initial investment with BLMIS; rather, Plaintiffs allege breaches of duty of care and breaches of fiduciary duty arising from Silverman's failure to oversee and protect Plaintiffs' investments from 2003 until December 2008, when the Madoff ponzi scheme was disclosed. (Compl. ¶ 60.) Thus, Plaintiffs appear to allege a "continuing tort" – in which case, the limitations period runs from the date the tortious conduct ceased. *Halkey-Roberts Corp. v.*

16

*Mackal*, 641 SO. 2d 445, 447 (Fla. 2d DCA 1994).  Because the Court finds there are issues of fact as to when Plaintiffs' causes of action accrued, it is not appropriate to dismiss their claims as time barred.  *See id.*

## IV.   Count 6 - Accounting

Finally, Silverman moves to dismiss Plaintiffs' claim for accounting on the basis that Plaintiffs failed to allege that Silverman ever possessed any of Plaintiffs' funds and because Plaintiffs failed to allege that they lacked an adequate remedy at law.  Plaintiffs did not respond to Silverman's arguments.

To state a claim for accounting, "the plaintiff must allege that 'the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.'"  *Bankers Trust Realty, Inc. v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (citing *F.A. Chastain Constr., Inc. v. Pratt,* 146 So. 2d 1102, 1103 (Fla. 3d DCA 1988) (holding that a complaint, alleging an uncomplicated agreement, did not warrant an action in accounting)).  In this case, Plaintiffs failed to allege that there is no adequate remedy at law, and they have failed to allege that there was a contractual relationship between themselves and Silverman involving complicated accounts.  Therefore, the Court dismisses Count 6 from the Complaint.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Westport is DISMISSED from this action for lack of personal jurisdiction. It is further

ORDERED AND ADJUDGED that Count 6 is DISMISSED as to Silverman.  It is further

ORDERED AND ADJUDGED that Count 1 is DISMISSED as to Silverman for failure to adequately pled a securities fraud claim. Plaintiffs SHALL have **fifteen days** from the date of this Order in which to serve a second amended complaint that satisfies the heightened pleading requirements for securities fraud claims. Failure to file an amended complaint by this date will result in the dismissal of the Complaint in its entirety.

DONE AND ORDERED in Chambers, in Miami, Florida this _4th_ day of November, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: counsel of record